UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JOHN DOE, Individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>UNIVERSITY HEALTH SYSTEM, INC. D/B/A THE UNIVERSITY OF TENNESSEE MEDICAL CENTER,<br><br>       Defendant. | Civil Action No. _____ |

## NOTICE OF REMOVAL

Defendant University Health System, Inc. d/b/a The University of Tennessee Medical Center ("Defendant") hereby removes this putative class action to federal court pursuant to the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1). In support, Defendant provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

### NATURE OF THE CASE

1. Over the past two decades, the federal government has engaged in an extensive effort to establish a nationwide health information technology infrastructure. This case is one of numerous website privacy cases that have been filed against health care providers throughout the nation, including several cases across federal courts. *Naugle v. Duke University Health System, Inc.,* Case No. 1:22-cv-00727 (M.D.N.C. Sept. 9, 2022); *Simon v. New York-Presbyterian Healthcare System, Inc. et al.*, Case No. 23-3428 (S.D.N.Y. Apr. 24, 2023); *Kurowski v. Rush Sys.*

1

*for Health*, No. 22 C 5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023); *Cousin, et al. v. Sharp Healthcare*, --- F. Supp. 3d ---, 2023 WL 448441 (S.D. Cal. 2023).

2.     Named plaintiff John Doe filed his putative Class Action Complaint against Defendant in the Chancery Court for the Sixth Judicial District, Knox County, Tennessee, Case No. 207369-2 on August 28, 2023 (the "Complaint"); *See* Ex. 1, State Court Dkt., Compl., filed August 28, 2023. Doe served Defendant with a copy of the Complaint on September 1, 2023, via certified mail. Return of Service, *Id*.

3.     The underlying factual basis for Doe's Complaint is that Defendant allegedly violated Tennessee law by embedding certain third-party source codes—called the Meta Pixel— onto Defendant's publicly available websites, referred to in the Complaint as the "Website" and "Online Platforms." Ex. 1 at ¶¶ 5-7, 9-10.

4.     Doe further alleges that Defendant violated Tennessee law by installing other tracking technology—such as the Google Tag Manager, Google Analytics, LinkedIn, The Trade Desk, DoubleClick, and Sipli.fi—on its website. *Id.* at ¶ 18.

5.     Doe alleges that these tracking tools, including the Meta Pixel, are "bits of code" that collect data on users as they navigate the Website and Online Platforms, including "any buttons clicked by site visitors, the labels [*sic*] those buttons and any pages visited as a result of the button clicks." *Id*. at ¶¶ 47, 53.

6.     Doe alleges that Defendant "purposely installed the Meta Pixel and trackers" on its Website and Online Platforms. *Id.* at ¶ 43. "In doing so, Defendant surreptitiously shared patients' private and protected communications, including those containing Plaintiff's and Class Members' Private Information, with Facebook and other third parties." *Id.*

2

7. For example, as Doe alleges, Defendant installed the Meta Pixel and other trackers on its online Patient Portal, located at https://www.utmedicalcenter.org/patients-visitors/patient-portal. *Id*. at ¶¶ 16, 84.

8. Plaintiff alleges that he has been a patient of Defendant since 2014 and that he accessed the Website and Online Platforms to search for primary care, to locate a mental health therapist, a dermatologist, and an optometrist, to pay a bill, and to review provider's credentials. *Id*. at ¶¶ 93-95.

9. Based on these alleged facts, Doe's Complaint contains eight counts against Defendant under Tennessee law: (1) negligence (*id.* at ¶¶ 164-171), (2) negligence *per se* (*id.* at ¶¶ 172-183), (3) invasion of privacy-intrusion upon seclusion (*id.* at ¶¶ 184-193), (4) breach of implied contract (*id.* at ¶¶ 194-204), (5) unjust enrichment (*id.* at ¶¶ 205-212), (6) breach of fiduciary duty (*id.* at ¶¶ 213-219), (7) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* (*id.* at ¶¶ 220-233), and (8) violation of Tennessee Code Annotated § 39-13-601 (*id.* at ¶¶ 234-244).

**GROUNDS FOR REMOVAL**

10. Defendant removes Doe's complaint under the federal officer removal statute, codified at 28 U.S.C. §1442(a).

11. Under 28 U.S.C. § 1442(a)(1), a civil action that is "against or directed to" any of the following may be removed to federal court: "(1) the United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an office or individual capacity, *for or relating to any act under color of such office* . . . ." *Id*. § 1442(a)(1) (emphasis added).

12. To remove under the statute, Defendant must show that as a private "person" (1) it acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) it has a colorable federal defense to the claims. 28 U.S.C. § 1442(a)(1); *see Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *see also Greene v. Citigroup, Inc.*, No. 99-1030, 2000 WL 647190, at *2 (10th Cir. May 19, 2000) (unpublished) (applying a similar three-part test for federal officer removal jurisdiction); *see also, Hazen v. S. Hills Nat. Bank of Tulsa*, 414 F.2d 778, 779 (10th Cir. 1969) (the court, citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969), found that it was sufficient for one seeking removal under § 1442(a)(1) to show that the defendant's relationship with the plaintiff arose solely due to the defendant fulfilling his official duties as appointed by an agency of the United States federal government).

13. The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants can remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

I. **Defendant is a "Person" Within the Meaning of the Statute.**

14. Doe alleges Defendant is "a non-profit corporation organized and existing under the laws of the State of Tennessee." Ex. 1 at ¶ 29.

15. While the statute is silent as to the definition of a "person," organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,* 25 F.4th 1238, 1251 (10th Cir. 2022), *cert. denied*, 143 S. Ct. (2023) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008) for the proposition that

"[c]orporations are persons under § 1442(a)"). Utilizing this logic, Defendant is a person under the federal officer removal statute.

**II.      Defendant Acted Under Color of Federal Law under 28 U.S.C. § 1442(a)(1).**

16.     President George W. Bush first established "the position of National Health Information Technology Coordinator" in 2004 "to provide leadership for the development and nationwide implementation of an interoperable information technology infrastructure to improve the quality and efficiency of healthcare." *See* Exec. Order No. 13335, at pg. 702 (Apr. 27, 2004), *Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator*, available at https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-use-health-information-technology-and. The purpose of the Executive Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

17.     Under the Executive Order, "[t]he National Coordinator shall, to the extent permitted by law, develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." *Id.* at pg. 703 (*Section 3, Responsibilities of the National Health Information Technology Coordinator*).

18.     In 2009, Congress codified the National Coordinator position through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act), *see* 123 Stat. 115, 230 (2009): "There is established within the Department of Health and Human Services an Office of the National Coordinator for Health Information Technology (referred to in this

5

Case 3:23-cv-00357-KAC-DCP   Document 1   Filed 09/29/23   Page 5 of 15   PageID #: 5

section as the 'Office.' The Office shall be headed by a National Coordinator who shall be appointed by the Secretary and shall report directly to the Secretary." 42 U.S.C. § 300jj-11(a) (Office of the National Coordinator for Health Information Technology).

19. Congress tasked the National Coordinator with certain federal duties through the HITECH Act, *see* 42 U.S.C. § 300jj-11(c)(1) ("Duties of the National Coordinator"), including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to the following: (i) The electronic exchange and use of health information and the enterprise integration of such information." 42 U.S.C. § 300jj-11(3)(A).

20. The HITECH Act further required, as a duty for the National Coordinator, "Collaboration": "The strategic plan shall be updated through collaboration of public and private entities." 42 U.S.C. § 300jj-11(3)(B).

21. From the outset, a core tenet of this federal health information technology initiative was for individuals to have access to their health care records online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, *The Decade of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care*, at pg. e (July 21, 2004) (discussing a "Medicare beneficiary portal"); *id.* at Attachment 1, Off. of Personnel Mang't Rep. at 6-7 (July 2004) (discussing "MyAnthem," which "provides an easy way to help members gain more control over their health care benefits through secure access that's available at any time and from any place"); *id.* at Attachment 2, Veteran Affairs Rep., at 18 (July 15, 2004) (discussing "My HealtheVet – The Personal Health Record").

22. To make this and other federal health information technology goals a reality, the HITECH Act allocated billions of dollars for the health care system to adopt and meaningfully use

6

"certified health information technology." *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology).

23. The following year, the Department of Health and Human Services implemented this Congressional enactment through the "Meaningful Use Program," which is now known as the Promoting Interoperability Program. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010).

24. The Meaningful Use Program mandated that participants provide their patients with the ability to "view, download, and transmit" their health information online. *See, e.g.*, 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission."); *id.* at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

25. Defendant acted pursuant to these Meaningful Use Program in making a patient portal available to Defendant's patients online. As set forth above, the link to this patient portal is available at https://www.utmedicalcenter.org/patients-visitors/patient-portal.

26. Ongoing usage of the portal is necessary for Defendant to meet the Meaningful Use Program criteria. Defendant submits mandatory annual reports on its involvement in the Meaningful Use Program / Promoting Interoperability Program to the Center for Medicare and Medicaid Services (CMS) through the QualityNet Secure Portal, also known as QNet. These reports are made specifically to meet federal requirements and include submissions regarding the Defendant patient portal and Defendant's patients' use of the portal.

### III. Doe's Tennessee State Law Claims are "For or Relating to" the Defendant Patient Portal.

27. The next requirement for federal officer removal is a causal nexus between Defendant's actions taken under federal law and Doe's claims. To meet this requirement, under the plain language of 28 U.S.C. § 1442(a)(91), Doe's claims must only be "for or relating to" Defendant's actions taken under federal law. 28 U.S.C. § 1442(a)(1).

28. "Circuits have consistently given this requirement a broad reading." *Moore v. Elec. Boat Corp.,* 25 F.4th 30, 35 (1st Cir. 2022). In fact, the "for or relating to" requirement under § 1442(a)(1) is liberally construed and constitutes a lower burden than even a "causal connection." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (overturning a district court that imposed a "strict causal connection" though "§ 1442(a)(1) requires [] only that the charged conduct *relate to* an act under color of federal office). Moreover, any single claim is independently sufficient to satisfy the "for or relating to" requirement under § 1442(a)(1); *see Moore*, 25 F.4th at 35 (citing *Baker v. Atl. Richfield Co*., 962 F.3d 937, 945 (7th Cir. 2020)).

29. This statutory language is met here because Doe specifically claims that it is an alleged privacy violation under Tennessee state law each time an individual utilizes Defendant's publicly accessible website.

30. Doe alleges that "[u]nder HIPAA, a healthcare provider may not disclose personally identifiable, non-public medical information (PHI) about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization." Ex. 1 at ¶ 107 (footnote omitted).

31. Doe further alleges that "[g]uidance from the United States Department of Health and Human Services instructs healthcare providers that patient status alone is protected by HIPAA." *Id.* at ¶ 108; *see also id.* at ¶ 113 (claiming "where an individual seeks medical treatment" is considered PHI under the HIPAA privacy rule) (quoting U.S. Dep't of Health & Human

8

Case 3:23-cv-00357-KAC-DCP    Document 1    Filed 09/29/23    Page 8 of 15    PageID #: 8

Services, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*).

32. As set forth above, the Defendant patient portal is one of the alleged "Online Platforms" at issue in the Complaint. Ex 1 at ¶ 5 ("Defendant encourages its patients to use its website, https://www.utmedicalcenter.org/ (the 'Website') and its various web-based tool and services, allowing patients to search for physicians, locate healthcare facilities, learn about specific health conditions and treatment options, and more."); *id.* at ¶ 41 (Defendant "services many of its patients via its Online Platforms, which is encourages patients to use to find healthcare services … and find providers … and find provider locations …, search for information about specific health conditions and treatment options, request appointments, access medical records, pay bills (including via the Patient Portal, ) *[sic]*, and more.").

33. Doe specifically alleges that he relied on Defendant's Online Platforms to communicate confidential patient information. *Id*. at ¶ 93.

34. Further, Doe alleges that Defendant "transmits information about users' patient portal activities through tracker events, beginning as soon as a user clicks on a button to access and launches the patient portal landing page." *Id.* at ¶ 84.

35. Moreover, Doe alleges that it is a breach of fiduciary duty (among other violations) each time an individual clicks on Defendant's patient portal link alone.

36. Doe alleges that his breach of fiduciary claim is based on the alleged disclosure of patient status in this manner: "Defendant breached the fiduciary duty that it owed to Plaintiff and the Class Members by . . . failing to protect, and intentionally disclosing, their Private Information." *Id.* at ¶ 215.

37. The Private Information referred to by Doe includes his "confidential Personally Identifying Information ('PII') and/or Protected Health Information ('PHI') (collectively referred to as 'Private Information')." *Id*. at ¶ 1 (footnotes omitted).

38. "'[P]rotected health information' is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations." *Id*. at fn. 2 (quoting 45 C.F.R. § 160.103).

39. Specifically, Doe alleges that this includes information "*such as an indication that the individual was treated at a certain clinic*." *Id*. at ¶ 109 (emphasis added); *see also id.* at ¶ 108 (claiming "[g]uidance from the United States Department of Health and Human Services instructs healthcare providers that *patient status alone* is protected by HIPAA." (emphasis added)).

40. In sum, through his allegations, Doe alleges that Defendant's publicly available Website and online patient portal repeatedly violate his and the putative class members' privacy by violating HIPAA, giving rise to a breach of fiduciary duty (among other claims) under Tennessee state law every time an individual clicks on Defendant's Website and attempts to access its Online patient portal.

41. For these reasons, Doe's claims meet the statutory requirement of being "for or related to" Defendant's alleged actions taken under color of federal law.

**IV.     Defendant has Colorable Federal Defenses to Doe's Claims.**

42. Defendant has colorable federal defenses to Doe's claims.

43. *First*, when an alleged and disputed federal duty forms the basis for plaintiff's alleged state law claims, then removal under 28 U.S.C. 1442(a)(1) is appropriate. *Jefferson Cty.,*

*Ala. v. Acker*, 527 U.S. 423, 431 (1999) (holding that "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends upon federal law"). In this case, Plaintiff's Complaint relies on a purported interpretation of HIPAA as the basis for several of his causes of action. Ex. 1 at ¶¶ 107-114. As the Supreme Court held in *Mesa v. California*, 489 U.S. 121 (1989): "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." 489 U.S. at 130 (emphasis in original). "Both are equally defensive and equally based in federal law." *Id*.

44. Here, Defendant will argue that the specific information allegedly disclosed (i.e., IP addresses and other web metadata) is outside of the purview of protected health information as defined by HIPAA. *See Kurowski v. Rush System for Health*, 2023 WL 4707184, at *3-4 (N.D. Ill. July 24, 2023) (holding that "[t]he interpretation of [individually identifiable health information] offered by HHS in its guidance goes well beyond the meaning of what the statute can bear"). The Northern District of California has already held as such in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

45. *Second*, Defendant has a preemption defense to Defendant's Tennessee state law claims. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

46. A defendant therefore cannot be held liable under a given state law for doing precisely what the federal government wants it to do—as applied here, not only making an online portal readily available to patients but also promoting the meaningful use of that portal. *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

47. *Third,* the First Amendment will be a defense to Doe's alleged causes of actions because in *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Supreme Court held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Id*. at 570. Doe's entire Complaint challenges how Defendant allegedly uses its website analytical tools to enhance Defendant's ability to speak to the public, including through the creation and dissemination of information. *E.g.,* Ex. 1 at ¶¶ 5, 41.

48. As the Supreme Court has also held, specifically emphasizing the fundamental need of maintaining the First Amendment's protection of speech on the internet: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

49. Defendant satisfies all of the procedural requirements under 28 U.S.C. § 1446.

50. Defendant was served on September 1, 2023, and is filing this notice of removal within thirty days of its receipt of the Complaint by service pursuant to 28 U.S.C. § 1446; *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

51. Defendant files this notice of removal in the United States District Court of the Eastern District of Tennessee because the state court in which the action is pending, the Chancery Court for the Sixth Judicial District, Knox County, State of Tennessee, is located within the federal judicial district.

52. The removal notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

53. Defendant has attached a copy of the state court pleadings that were filed in the Chancery Court of Knox County prior to removal as collective **Exhibit 1**.

54. Upon filing this Notice of Removal, Defendant will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Chancery Court.

## CONCLUSION

Doe's Complaint directly challenges practices and procedures Defendant has taken acting under color of federal law, and this case is therefore removable to this Court under 28 U.S.C. § 1442(a)(1).

Dated: September 29, 2023

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

/s/ *Samuel L. Felker*
Samuel L. Felker (TN Bar No. 009045)
Ryan Loofbourrow (TN Bar No. 33414)

1600 W End Ave Ste 2000
Nashville, TN 37203
615-726-5558
samfelker@bakerdonelson.com
rloofbourrow@bakerdonelson.com

*and*

Nicholas W. Diegel (TN Bar No. 034211)
265 Brookview Centre Way # 600
Knoxville, TN 37919
865-971-5108
ndiegel@bakerdonelson.com

*and*

Paul G. Karlsgodt (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
*pkarlsgodt@bakerlaw.com*

John P. Hutchins (*pro hac vice Forthcoming*)
Georgia L. Bennett *(pro hac vice Forthcoming)*
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309
Telephone: 404.459.0050
Fax: 404.459.5734
*jhutchins@bakerlaw.com*
*gbennett@bakerlaw.com*


*Counsel for Defendant University Health System, Inc. d/b/a The University of Tennessee Medical Center*

14

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 29, 2023, a true and correct copy of the foregoing **Notice of Removal** was served on counsel of record via email.

> J. Gerard Stranch, IV
> Andrew E. Mize
> **STRANCH, JENNINGS & GARVEY, PLLC**
> The Freedom Center
> 223 Rosa L. Parks. Ave., Suite 200
> Nashville, Tennessee 37203
> Telephone: (615) 254 - 8801
> Facsimile: (615) 225 - 5419
> gstranch@stranchlaw.com
> amize@stranchlaw.com
>
> Lynn A Toops, No. 26386-49
> Mary Kate Dugan, No. 37623-49
> **COHEN & MALAD, LLP**
> One Indiana Square, Suite 1400
> Indianapolis, Indiana 46205
> Telephone: (317) 636 – 6481
> ltroops@cohenandmalad.com
> mdugan@cohenandmalad.com
>
> Samuel J. Strauss
> Raina Borelli
> **TURKE & STRAUSS, LLP**
> 613 Williamson St., Suite 201
> Madison, Wisconsin 53703
> Telephone: (608) 237-1775
> Facsimile: (608) 509 - 4423
> sam@turkestrauss.com
> raina@turkestrauss.com

/s/ *Samuel L. Felker*